**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------

Rodney McMillan,  ]
  ]
        Plaintiff,  ]  **10 CV 4806 (JSR)**
  ]
    - against -  ]
  ]  **Plaintiff's Rule 56.1**
City of New York,  ]  **Counterstatement of**
  ]  **Material Disputed Facts**
        Defendant,  ]
-----------------------------------------------------------------  ]

       Plaintiff, by his attorney, Michael G. O'Neill, submits the following Rule 56.1 Counterstatement of Material Disputed Facts:

       **Objection to Defendant's Rule 56.1 Statement.**

       The local rule states that the Rule 56.1 statement shall be a "short and concise statement" of the material facts as to which the moving party contends there is no genuine issue to be tried. A material fact is one that makes a difference in the determination of the case. Defendant's Rule 56.1 statement is neither short nor concise, and it contains scores of facts that are entirely immaterial to the outcome of this lawsuit. Defendant clutters its statement with background information and facts that serve no purpose other than to provide "color" or context. This serves no legitimate purpose on the motion and simply drives up the cost and inconvenience of litigation to the plaintiff.

       1.      Plaintiff Rodney McMillan, a Caseworker employed by the New York City Human Resources Administration ("HRA"), brings this action against defendant City of New York alleging claims pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. 12-112 et seq. ("ADA"), the New York State Human Rights Law, NY Executive Law §§ 290, et seq.

("SHRL"), and the New York City Human Rights Law, NYC Administrative Code §§ 8-101, et seq, ("CHRL"). Exhibit A1, Amended Complaint.

**Response**

Agreed.

2.      Plaintiff alleges that defendant failed to provide him with reasonable accommodations and that he was discriminated against based on his disability in that he was disciplined for time and leave issues. Exhibit A, Amended Complaint.

**Response**

Agreed.

3.      Plaintiff testified that he was born without a left arm. Exhibit B, Pl. Dep. at 45:12-19.

**Response**

Plaintiff objects to this and the many following paragraphs that state the substance of what a party or witness testified to.  Plaintiff does not know whether defendant contends that plaintiff's testimony itself is a material fact, or that the underlying fact testified to by the witness is material – to wit that he was born without a left arm.  In order to avoid this ambiguity, plaintiff will interpret this and all similar statements to be an assertion as to the subject of the testimony, and not the fact of the testimony itself.  In other words, by agreeing to this instant paragraph, plaintiff is agreeing to the fact that he was born without a left arm.  This is the only logical interpretation of defendant's statement, otherwise plaintiff could admit to the accuracy of defendant's summary of testimony, while disagreeing with the truthfulness of the testimony

itself.  See for example paragraph 29 below.  Plaintiff acknowledges that the witness so testified, but denies that the testimony is accurate or that it has a proper foundation.

Agreed that plaintiff was born without a left arm.

4.      Plaintiff testified that in the "1980's" he was diagnosed with schizophrenia. Exhibit B, Pl. Dep. at 53:7-14.

**Response**

Agreed that plaintiff has been diagnosed as schizophrenic.

5.      Plaintiff first became employed by HRA in 1987 as a Caseworker. Exhibit B, Pl. Dep. at 30:14-19. Plaintiff testified that he was appointed as a Caseworker after taking a civil service examination and was subsequently appointed to the position of Caseworker off of the civil service list. Exhibit B, Pl. Dep. at 31:4-10. Plaintiff testified that Caseworker is his civil service title and that his position is sometimes also referred to as a Case Manager. Exhibit B, Pl. Dep. at 30:17-25; 31:1-3.

**Response**

Agreed.

6.      Plaintiff testified that from 1987 to 1997 he was assigned to HRA's Division of Post Institutional Services ("DOPIS") as a Caseworker and that while assigned to DOPIS he assisted clients that were released from New York State mental institutions in receiving social service benefits. Exhibit B, Pl. Dep. at 31:11-25, 32:6-12.

**Response**

Agreed.

7.          Plaintiff testified that in 1997 DOPIS was eliminated and plaintiff was assigned to HRA's Community Alternative Systems Agency V ("CASA V"). Exhibit B, Pl. Dep. at 34:3-7. Plaintiff testified that his job responsibilities at CASA V include assisting clients with obtaining social services, including obtaining assistance in paying rent and utilities and visiting each of his clients on a yearly basis to assist in reauthorizing the client's Medicaid benefits but that if there is an "emergency," he might meet with a client more than one time per year. Exhibit B, Pl. Dep. at 36:22-25; 37; 38; 39-1-3.

**Response**

Agreed.

8.          Plaintiff testified that if a client needed to speak with him, the client could come to CASA V to meet with and that a client comes to his office to meet with him "every day." Exhibit B, Pl. Dep. at 100:14-25; 101:1-5.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

9.          Plaintiff testified that his clients are either elderly or disabled. Exhibit B, Pl. Dep. at 100:14-25; 101:1-5.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

4

10.     Plaintiff testified that Denise Heyward has been the Director of CASA V since 2008. Exhibit B, Pl. Dep. at 36:4-8. Plaintiff further testified that since approximately 2000 his direct supervisor has been Loshun Thornton and that his second-line supervisor is Jean Belthrope. Exhibit B, Pl. Dep. at 34:24-25; 35; 36:1-16.

**Response**

Agreed.

11.     Plaintiff testified that his current work schedule is 10 a.m. to 6 p.m. and that this has been his schedule since 1997. Exhibit B, Pl. Dep. at 67:19-25; 68:1-2. Plaintiff further testified that because his schedule is a "flex time schedule" he can arrive at any time between 9 a.m. and 10 a.m. and work until between 5 p.m. and 6 p.m. Exhibit B, Pl. Dep. at 68:1-11.

**Response**

Agreed that plaintiff works under a flex time schedule which permits him to arrive at any time between 9 and 10.

12.     Plaintiff also testified that employees assigned to CASA V are given a fifteen minute grace period because employees sometimes have to wait for the elevator in the building that houses CASA V. Exhibit B, Pl. Dep. at 68:6-20. As such, plaintiff testified that he can arrive to work at any time up to 10:15 a.m. Exhibit B, Pl. Dep. at 68:6-20.

**Response**

Agreed.

13.     In November 1997, plaintiff filed a charge of disability discrimination against HRA with the U.S. Equal Employment Opportunity Commission ("EEOC"). Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006).

This EEOC charge was settled on July 1, 1998. Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006).

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

14.        In April 2001, plaintiff filed a disability discrimination complaint with the New York State Division of Human Rights ("SDHR") alleging that HRA and one of his then supervisors, Judith Carter, violated the ADA by disciplining plaintiff for lateness. Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006). Ms. Carter was one of plaintiff's supervisors from 1997 to September 28, 2001. Exhibit 2 The transcript of plaintiff's deposition identifies Denies Heyward as "Denies Hayward." C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006). The SDHR investigated the complaint and, on July 26, 2001, dismissed the complaint finding no probable cause. Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006).

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

15.        On December 26, 2002, plaintiff commenced an action in New York State Supreme court alleging that HRA failed to abide by the settlement agreement entered into in

1998 in connection with the EEOC charge and alleged that Ms. Carter harassed him and subjected him to disparate treatment based on his disability, namely by disciplining plaintiff for lateness.  Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006).

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

16.      The Court held that plaintiff's State Court action was barred by the election of remedies doctrine in that "any person claiming to be the victim of an unlawful discriminatory practice has a cause of action in any court of appropriate jurisdiction provided that they have not filed a complaint with the State or any local commission on human rights." Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006). Therefore, the Court held that because plaintiff's 2001 complaint to the SDHR contained the same allegations as those in his State Court action, the State Court action was barred. Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006).

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

17.     The Court went on to note that plaintiff's action would also fail based on the merits in that HRA had a legitimate business reason for disciplining plaintiff because of his lateness that plaintiff could not demonstrate was pretextual. Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006).

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph, noting that the court's observations were obiter dicta.

18.     On October 17, 2006, the Court dismissed plaintiff's State Court action. Exhibit C, Decision in McMillian v. City of New York, et al., Index No. 127822/02 (N.Y. Sup. Ct. Oct. 17, 2006).

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

19.     On or about March 23, 2010, plaintiff submitted a form entitled "Request for Reasonable Accommodation" to HRA's Office of Equal Employment Opportunity ("OEEO"). Exhibit D, Request for Reasonable Accommodation, date stamped March 23, 2010. In this request, plaintiff indicated that he was "requesting voice activated equipment to do my work," "a later flex time," and "a printer to go with my specialized computer that I have had for many years." Exhibit D, Request for Reasonable Accommodation, date stamped March 23, 2010.

**Response**

Agreed.

20.       Plaintiff testified that the "later flex time" he was requesting was to arrive between 10 a.m. and 11 a.m. Exhibit B, Pl. Dep. at 83:7-14. Plaintiff testified that while he "usually" wakes up everyday between 7 a.m. and 7:30 a.m., medication that he takes for schizophrenia makes him "drowsy" in the morning and that on some days the medication made him "sluggish." Exhibit B, Pl. Dep. at 67:5-18; 80:24-25; 81:1-9. When asked what plaintiff meant by the term "sluggish," plaintiff testified "Well, not getting out to work at the proper time." Exhibit B, Pl. Dep. at 80:24-25; 81:1-9.

**Response**

Agreed.

21.       Plaintiff testified that in the two months preceding his March 23, 2010 Request for Reasonable Accommodation, on January 13, 2010 through March 15, 2010, he arrived to work after 11:15 a.m. a total of 20 times. Exhibit B, Pl. Dep. at 93:2-5.

**Response**

Disputed that the two months before March 23, 2010 is January 13 through March 15. Also disputed that there is any legal or factual significance the an arbitrary measure of two months.  Plaintiff does not dispute defendant's calculation of plaintiff's lateness during the dates referenced.

22.       In 2008, plaintiff's time records indicate that plaintiff arrived to work after 11 a.m. 67 times. Exhibit R, Time Records.

**Response**

Plaintiff counts 76 times.  O'Connor Dec. Ex. R.

23.        In 2009, plaintiff's time records indicate that plaintiff arrived to work after 11

a.m. 54 times. Exhibit R, Time Records.

**Response**

Plaintiff counts 47 times. O'Connor Dec. Ex. R.

24.        From January 1, 2010 to up to and including March 23, 2010, plaintiff's time

records indicate that plaintiff arrived to work after 11 a.m. 26 times. Exhibit R, Time Records.

**Response**

Plaintiff counts 29 times. O'Connor Dec. Ex. R.

25.        From March 23, 2010 to September 10, 2010, plaintiff's time records indicate

that plaintiff arrived to work after 11 a.m. 36 times. Exhibit R, Time Records.

**Response**

Plaintiff counts 41 times. O'Connor Dec. Ex. R.

26.        When asked at his deposition why he thought he could arrive to work by 11

a.m., plaintiff testified "I thought maybe I could – I thought I was putting forth an effort."

Exhibit B, Pl. Dep. at 93:11-24.

**Response**

Disputed as irrelevant, immaterial and taken out of context.  There is no legal

significance to plaintiff's rationale for seeking an accommodation or his belief as to its efficacy.

Defendant's obligation was to engage in an interactive process to determine whether there was

an appropriate accommodation for plaintiff.

27.      On March 29, 2010, Margaret Etkins, an investigator in HRA's OEEO, contacted Ms. Thornton regarding plaintiff's request for a later flex time. Exhibit E, Human Resources Administration Equal Employment Opportunity Office Notes, dated March 29, 2010; Exhibit F, Lemons 12/22/10 Dep. at 242:7-25; 243:1-16.  Ms. Etkins' notes from this conversation indicate that Ms. Thornton advised her that a later flex time, i.e. to 11 a.m., would not be possible because there is no supervision at CASA V after 6:00 p.m. Exhibit E, Human Resources Administration Equal Employment Opportunity Office Notes, dated March 29, 2010

**Response**

Plaintiff does not dispute that defendant repeatedly cited the lack of supervision after 6 p.m. as its reason for not accommodating plaintiff's request for a later flex time.  In its motion for summary judgment, however, defendant does not rely on that rationale for its refusal to grant plaintiff his requested accommodation.  Despite defendant's repeated assertion of this rationale, plaintiff frequently worked past 6 p.m.  For example, during the time period covered by the time sheets annexed to defendant's moving papers as Exhibit R, plaintiff worked until 7 p.m. or later at least 49 times!  Therefore, even if defendant were somehow relying on its "no supervision" assertion, there would be material issues of fact, because plaintiff often worked until 7 p.m. or later.

28.      Ms. Heyward advised the Deputy Director of HRA's OEEO, Donald Lemons, that plaintiff's request for a later flex time could not be accommodated because no supervisors work past 6 p.m. at CASA V. Exhibit I, E-mail chain from Donald Lemons to Denise Heyward; Exhibit G, Lemons 12/20/10 Dep. at 11:6-14.

**Response**

See response to paragraph 27.

29.     At her deposition, Ms. Thornton testified that for any shift on which a Caseworker is working "there would have to be a supervisor present as well working that shift." Exhibit H, Thornton 12/14/10 Dep. at 113:24-25; 114:1-12.

**Response**

See response to paragraph 27.

In addition, plaintiff disputes that Thornton's testimony establishes any fact. Thornton's testimony was prefaced by "I think" and the source of her knowledge is never established. Thornton Dep. 113:24-25. Thornton is not a policymaker. Finally, since it is defendant's workplace, defendant is at liberty to modify any of its rules and regulations concerning such matters as the requirement for a supervisor to be present.

30.     Mr. Lemons also testified at his deposition that he spoke with plaintiff's supervisor and was advised that plaintiff could not have a later flex time because no supervisors work past 6:00 p.m. at CASA V. Exhibit G, Lemons 12/20/10 Dep. at 54:20-25; 55:1-10.

**Response**

See response to paragraph 27.

31.     Mr. Lemons further testified that he was advised by plaintiff's supervisor that plaintiff "sometimes" comes in later than 11:00 a.m. Exhibit F, Lemons 12/22/10 Dep. at 147:6-19. Mr. Lemons testified that he then verified this information by looking at plaintiff's time and leave records. Exhibit F, Lemons 12/22/10 Dep. at 147:6-19.

**Response**

Plaintiff submits that the time records speak for themselves, and he acknowledges that he sometimes arrives past 11:00 a.m.

32.     Mr. Lemons testified that even if plaintiff's request for a later flex time as granted "it doesn't seem that would have helped his situation" because he was arriving at work after 11:00 a.m. Exhibit F, Lemons 12/22/10 Dep. at 148:16-25; 149:1-24.

**Response**

Denied that Lemons' opinion testimony is either material or admissible.  Lemons was not in a position to give an opinion as to what would be helpful to the plaintiff because Lemons never met with the plaintiff and never engaged in the interactive process with plaintiff to explore possible accommodations with the plaintiff. Lemons Dep. 43:19-21, 68-69, 73-75.  If anything, Lemons' testimony highlights the irresponsibility of failing to engage in the interactive process.

33.     Mr. Lemons testified that he advised plaintiff that he could not accommodate plaintiff's request for a later flex and that plaintiff stated that he "understood."  Exhibit F, Lemons 12/22/10 Dep. at 148:16-25; 149:1-24; Exhibit G, Lemons 12/20/10 Dep. at  66:21-25; 67:1-14.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

34.     Mr. Lemons also testified that plaintiff told him that plaintiff did "not want to leave that location," i.e. CASA V, because "[i]t was close to [plaintiff's] house." Exhibit F, Lemons 12/22/10 Dep. at 150:25; 151:1-10.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

35.      Mr. Lemons testified that HRA maintains job centers at which employees can work an 11 a.m. to 7 p.m. shift. Exhibit G, Lemons 12/20/10 Dep. at 79:15-25. Mr. Lemons further testified that in order to work at these job centers the employee must hold the title of Job Opportunity Specialist. Exhibit G, Lemons 12/20/10 Dep. at 79:15-25; 80; 81; 82; 83:1-6. Mr. Lemons testified that the Job Opportunity Specialist is a "unique title" in that an employee in this title is trained to see if someone is eligible for a particular benefit. Exhibit G, Lemons 12/20/10 Dep. at 79:15-25; 80; 81; 82; 83:1-6. Mr. Lemons also testified that the work performed by a Caseworker and the work performed by a Job Opportunity Specialist are not the same. Exhibit G, Lemons 12/20/10 Dep. at 79:15-25; 80; 81; 82; 83:1-6.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff submits that there is no foundation for Lemons' testimony.

36.      Mr. Lemons testified that HRA's OEEO sent plaintiff a letter indicating that his request for a later flex time could not be granted, that this letter stated that if this outcome "wasn't good for him to call us [i.e. OEEO] back" and that plaintiff "never called us back." Exhibit G, Lemons 12/20/10 Dep. at 66:21-25; 67:1-14.; Exhibit S, Letter from Stephanie Grant to plaintiff, dated June 15, 2010.

**Response**

Agreed that defendant denied plaintiff's request for a reasonable accommodation without engaging in the interactive process.  Plaintiff denies the remaining assertions in this paragraph as immaterial.

37.      Plaintiff testified that his union representative, Ruben Adeshuko, advised him that an HRA department entitled "JAS" had flex time hours from 11 a.m. to 7 p.m. Exhibit B, Pl. Dep. at 98:9-22. Plaintiff testified that he did not know what the acronym "JAS" stood for. Exhibit B, Pl. Dep. at 98:9-22. When asked at his deposition if he wanted to be transferred to JAS, plaintiff testified "Well, I had to learn more about it." Exhibit B, Pl. Dep. at 100:6-7. However, plaintiff testified that he "didn't really have time" to learn about "JAS." Exhibit B, Pl. Dep. at 100:6-13.

**Response**

Agreed except for the truncated and misleading quotation from plaintiff's testimony. Plaintiff testified that "I didn't really have time because I was going back and forth to the doctors at the time."  Plaintiff Dep. 100:12-13.  Plaintiff is referring to his prostate cancer treatment.

38.      When asked in his deposition if he ever requested to be transferred out of CASA V, plaintiff responded "Well, I can't say in time recently, no." Exhibit B, Pl. Dep. at 99:7-10. When asked in his deposition if plaintiff made such a request at any time, plaintiff responded "I'm not even sure about that, it's been so long." Exhibit B, Pl. Dep. at 99:7-12.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

39.      On or about April 22, 2010, plaintiff submitted a second request for a reasonable accommodation form to HRA's OEEO which included a request for a reduced caseload. Exhibit K, Request for Reasonable Accommodation, date stamped April 22, 2010.

**Response**

Agreed.

40.      Plaintiff testified that his current caseload is either 80 or 90 clients. Exhibit B, Pl. Dep. at 39:4-7. Plaintiff testified that the most clients he ever had at one time was over 200 and that was about five (5) years ago. Exhibit B, Pl. Dep. at 39:12-15.

**Response**

Plaintiff's current caseload is about 200 clients.  McMillan Dec. ¶ 3.

41.      Plaintiff testified that in 2009 he showed Ms. Heyward the "papers" he submitted to the U.S. Equal Employment Opportunity Commission and that her response to being shown these papers was to reduce plaintiff's caseload. Exhibit B, Pl. Dep. at 43:24-25; 44. Plaintiff testified that this reduction in his caseload was "substantial" and that he was "happy" with the reduction. Exhibit B, Pl. Dep. at 45:4-11.

**Response**

Disputed.  Plaintiff testified that he was never told that his caseload was reduced. Plaintiff Dep. 45:5-9.  His testimony that Ms. Heyward reduced his caseload is surmisal, and it is

contradicted by defendant's own documents.  O'Neill Dec. Ex. J.  There is in fact no competent

evidence that plaintiff's caseload was reduced.

42.     When asked at his deposition if he would have preferred to have his caseload

reduced more, plaintiff testified that "that range was pretty much okay." Exhibit B, Pl. Dep. at

128:5-11.

**Response**

Agreed.

43.     In response to plaintiff's April 2010 request for a reduced caseload, Ms.

Heyward advised Mr. Lemons that plaintiff's caseload was already reduced. Exhibit I, E-mail

chain from Donald Lemons to Denise Heyward.

**Response**

Agreed that the memo so states, denies that the memo is accurate.  See response to

paragraph 41 above.

44.     Plaintiff testified that in 2003 he was a plaintiff in a lawsuit regarding his

request for a reasonable accommodation that was allegedly not provided to plaintiff. Exhibit B,

Pl. Dep. at 3:23-25; 4; 5:1-16. The requested accommodation was voice-activated computer

equipment. Exhibit B, Pl. Dep. at 3:23-25; 4; 5:1-16.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of

defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this

objection, plaintiff agrees with the substance of this paragraph.

45.      Plaintiff testified that in or about 2003 the voice activated computer program entitled Dragon Naturally Speaking was installed on his work computer. Exhibit B, Pl. Dep. at 12:23-25; 13:1-14. Plaintiff testified that Dragon Naturally Speaking enables the user to speak into a headset and that whatever the user says into the headset will be transcribed on to the computer. Exhibit B, Pl. Dep. at 10:5-14.

**Response**

Agreed.

46.      Dragon Naturally Speaking software is a computer application which converts spoken voice into text and stores the result into a computer system. Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 3. Dragon Naturally Speaking can be used as a dictation method to create word processing documents or e-mails. Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 3.

**Response**

Agreed.

47.      Plaintiff testified that from approximately 2001 to 2005 or 2006, Mr. Jones was the Director of CASA V. Exhibit B, Pl. Dep. at 7:13-16.

**Response**

Agreed.

48.      Plaintiff testified that in 2003 the headset he had used with Dragon Naturally Speaking was given to Mr. Jones and "that's the last I saw of that one." Exhibit B, Pl. Dep. at 9:19-25; 10:1-4. Plaintiff testified that he asked Mr. Jones for the headset and that Mr. Jones stated that he did not have it. Exhibit B, Pl. Dep. at 14:13-19.

**Response**

Agreed.

49.      Plaintiff testified that he "was trying to see whether they had stolen it [the headset]." Exhibit B, Pl. Dep. at 16:16-23. Plaintiff testified that perhaps the cleaning crew that serviced CASA V had stolen the headset. Exhibit B, Pl. Dep. at 16:16-23.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

50.      Plaintiff testified that he could not remember if he had contacted OEEO regarding the allegation that he did not have a headset prior to his March 23, 2010 request for a reasonable accommodation. Exhibit B, Pl. Dep. at 114:14-18.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.

Subject to this objection, plaintiff agrees with the substance of this paragraph.

51.      Plaintiff testified that from 2004 to 2008, he did not use the Dragon Naturally Speaking computer program. Exhibit B, Pl. Dep. at 114:114:10-13.

**Response**

Agreed.  Plaintiff's full testimony was that he did not use the program because he did not have the headset for it.

52.        Plaintiff testified that in either 2008 or 2009 all the computers in CASA V were replaced with new computers and that in May or June of 2010 Dragon Naturally Speaking was re-installed on his new computer. Exhibit B, Pl. Dep. at 111:7-25; 112:1-9. Plaintiff also testified that in May or June of 2010 he received the headset that accompanies the Dragon Naturally Speaking software. Exhibit B, Pl. Dep. at 112:19-24.

**Response**

Agreed.

53.        Plaintiff testified that he believed Dragon Naturally Speaking would help him get his work done in less time in that it would assist him in completing the M-11S form and W25 form. Exhibit B, Pl. Dep. at 119:18-25; 120:1-11.

**Response**

Agreed.

54.        Plaintiff testified that the computer programs he utilizes on his work computer are: HALO, Word Perfect, WMS and Long Term Care Web. Exhibit B, Pl. Dep. at 108; 109; 110:1-13. Plaintiff testified that HALO is a computer application created by HRA that contains client information. Exhibit B, Pl. Dep. at 108:1-13. Plaintiff testified that WMS is a Medicaid database. Exhibit B, Pl. Dep. at 109:2-8. Long Term Care Web is a computer application developed by HRA to track and report on the client population receiving various homecare services. Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 4.

**Response**

Agreed.

55.      Plaintiff testified that Dragon Naturally Speaking does not "work" with the Long Term Care Web. Exhibit B, Pl. Dep. at 116:28-25; 117:1-2.

**Response**

Disputed.  This paragraph does not accurate summarize plaintiff's testimony, and the cited references do not support the assertions made by plaintiff.  Plaintiff's testimony, contained at page 116, line 21 until page 119, line 11, is that he does not use the program because he had not been trained in its use.  He has repeatedly sought training to no avail.  Plaintiff Dep. 116:21-119:11.  Plaintiff does not single out Long Term Care Web or any other program.

56.      Long Term Care Web is an event driven application with processes dependent on data from drop-down menus, radio and text boxes and command buttons. Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 4. These events are triggered by mouse clicks and keyboard data entry. Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 4. Current technology does not allow for events to be triggered by voice commands. Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 4.

**Response**

Disputed.  The affidavit of Verna Blake is based on inadmissible hearsay, namely conversations that she has had with unnamed employees of defendant.  Furthermore, Blake's affidavit does not comply with Rule 56(e)(1), because Blake does not demonstrate that she is competent to testify to the subject matter of her affidavit, specifically her sweeping statements concerning the current technology of voice recognition software.  Finally, Blake's assertions are contradicted by (a) promotional literature concerning Dragon Naturally Speaking (the voice recognition software in question) (b) the instructional "help" pages provided by the software, and

(c) the actual hands on experience of plaintiff's attorney, who has used Dragon Naturally

Speaking and avers that it is capable of performing the actions that Blake (based on her hearsay

sources) says cannot be done.  O'Neill Dec. ¶¶ 17-22.

57.      Verna Blake, an HRA employee holding the title of Computer Specialist

Software II and currently assigned to HRA's Technology Deployment Services, contacted

Nuance Software company, the manufacturer of Dragon Naturally Speaking, and verified that the

software is only guaranteed compatibility with Microsoft basic applications and therefore, as

Long Term Care Web is an HRA-developed program, is not compatible with the Long Term

Care Web.  Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 6.

**Response**

Disputed.  The affidavit of Verna Blake is based on inadmissible hearsay, namely

conversations that she has had with unnamed employees of Nuance Software Corporation.

Blake's assertions are contradicted by (a) promotional literature concerning Dragon Naturally

Speaking (the voice recognition software in question) (b) the instructional "help" pages provided

by the software, and (c) the actual hands on experience of plaintiff's attorney, who has used

Dragon Naturally Speaking and avers that it is capable of performing the actions that Blake

(based on her hearsay sources) says cannot be done.  O'Neill Dec. ¶¶ 17-22.

In addition, plaintiff testified that Long Term Care Web is a web based function accessed

via Internet Explorer, a Microsoft product.  Plaintiff Dep.109.  This means that the application

that plaintiff accesses on his computer is Internet Explorer.  Long Term Care Web, being

accessed via an internal internet (i.e., an intranet) actually runs on a server computer.  Thus,

plaintiff does not directly access that program, and he need only be able to control the functions

of Internet Explorer.

58.      Plaintiff testified that the M11-S form is a form that he completes one time per year for each of his clients to reauthorize their Medicaid services and he completes a M11-S form at least for or five times a week. Exhibit B, Pl. Dep. at 10:22-25: 11; 12:1-15; 101:13-25. Plaintiff testified that the M11-S form is a "preformed checklist" that has different sections on it that the user fills in. Exhibit B, Pl. Dep. at 10:22-25; 11; 12:1-8. Plaintiff testified that he cannot complete the M11-S form using Dragon Naturally Speaking. Exhibit B, Pl. Dep. at 10:22-25: 11; 12:1-15.

**Response**

Disputed.  Plaintiff's testimony, contained from page 10, line 5 through page 12, line 20, deals with his frustration over the fact that defendant has not properly installed the software. Plaintiff does not specifically attribute this to any particular program.  Plaintiff Dep. 10:5-12:20. See also plaintiff's testimony cited in response to paragraph 55 above, concerning the lack of training.

59.      Plaintiff testified that he uses Word Perfect to complete the W25 form. Exhibit B, Pl. Dep. at 108:19-22.

**Response**

Disputed.  Plaintiff testified that the form "worked" off Word Perfect.  Plaintiff Dep. 10:18.  Plaintiff's testimony suggests that the current procedure is different.  It is not a material fact in any event.

60.      Current technology does not allow for fill-in forms, such as the M-11S, to be used with voice activated software. Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 5.

**Response**

Disputed.  The affidavit of Verna Blake is based on inadmissible hearsay, namely

conversations that she has had with unnamed employees of defendant.  Furthermore, Blake's

affidavit does not comply with Rule 56(e)(1), because Blake does not demonstrate that she is

competent to testify to the subject matter of her affidavit, specifically her sweeping statements

concerning the current technology of voice recognition software.  Finally, Blake's assertions are

contradicted by (a) promotional literature concerning Dragon Naturally Speaking (the voice

recognition software in question) (b) the instructional "help" pages provided by the software, and

(c) the actual hands on experience of plaintiff's attorney, who has used Dragon Naturally

Speaking and avers that it is capable of performing the actions that Blake (based on her hearsay

sources) says cannot be done.  O'Neill Dec. ¶¶ 17-22.

61.    When asked at his deposition if plaintiff had ever received disciplinary charges

with respect to his work productivity, plaintiff testified "I can't remember any time. It was

mostly the lateness issue." Exhibit B, Pl. Dep. at 52:3-6.

**Response**

Agreed.

62.    In his March 2010 request for Reasonable Accommodation, plaintiff requested

a "printer to go with my specialized computer that I have had for many years." Exhibit D,

Request for Reasonable Accommodation, date stamped March 23, 2010.

**Response**

Agreed.

63.     At his deposition on November 30, 2010 plaintiff testified that he utilized one of the printers "in the back of the office" but was requesting a printer stationed at his desk. Exhibit B, Pl. Dep. at 123:8-17. Plaintiff testified that this printer was approximately 30 to 40 yards away from his desk and that in course of a day he would retrieve papers from the printer three or four times. Exhibit B, Pl. Dep. at 124:6-15.

**Response**

Disputed as out of context.  Plaintiff testified that he had a printer on his desk for ten years and that it stopped working in 2009.  His request for an accommodation was to have a functional printer to replace the printer that stopped working.  Plaintiff Dep. 123-127.

64.     Plaintiff testified that he previously had a printer at his work station but it broke in late 2009. Exhibit B, Pl. Dep. at 123:8-25; 124:102.

**Response**

Agreed.

65.     On December 13, 2010, a standalone printer was re-installed at plaintiff's work station. Exhibit J, Affidavit of Verna Blake, dated January 12, 2011, at ¶ 7.

**Response**

Agreed.

66.     Plaintiff testified that during the course of his employment with HRA he has been disciplined for lateness "at least four" times but that "it could be a little – a few more." Exhibit B, Pl. Dep. at 129:8-13.

**Response**

Agreed.

67.      In or about March 15, 2010, disciplinary charges and specifications were preferred against plaintiff alleging excessive lateness. Exhibit L, Charges and Specifications, date stamped March 15, 2010. Specifically, plaintiff was charged with being late without authorization 182 times for a total of 7,638 minutes from September 2, 2008 to September 20, 2009. Exhibit L, Charges and Specifications, date stamped March 15, 2010.

**Response**

Agreed.

68.      On April 22, 2010, an informal conference was held in connection with these charges. Exhibit M, Letter from Michael Fitzpatrick to plaintiff, dated May 6, 2010.

**Response**

Agreed although immaterial.

69.      Plaintiff testified at his deposition that at the informal conference he stated that he had been late on the days on which he was charged with being tardy. Exhibit B, Pl. Dep. at 130:5-9.

**Response**

Disputed.  Plaintiff's testimony was that:

"Well, I said that I thought it was unfair because I have these medical conditions that hamper me performing like everyone else and it was a hardship to put me in the same standards as everyone else because of my disabilities . . .."

Plaintiff Dep. 131:1-4.

Plaintiff asserts that his statements at the informal hearing are not material to this motion.

70.      The hearing officer at the informal conference therefore found that the charges and specifications had been established and recommended the penalty of termination.  Exhibit M, Letter from Michael Fitzpatrick to plaintiff, dated May 6, 2010.

**Response**

Agreed.

71.      On June 11, 2010, a Step II hearing was held in connection with the charges and specifications. Exhibit N, Memorandum from Gary Dodson to plaintiff, dated July 9, 2010. Plaintiff was represented by his union representative, Reuben Adeshuko, at the Step II hearing. Exhibit N, Memorandum from Gary Dodson to plaintiff, dated July 9, 2010.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

72.      At the Step II hearing, Mr. Adeshuko stated that plaintiff was guilty of the charges but that his lateness was due to mitigating circumstances in that his lateness is allegedly due to medication he takes to treat schizophrenia and therefore requested that the penalty of termination not be imposed. Exhibit N, Memorandum from Gary Dodson to plaintiff, dated July 9, 2010.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

27

73.        Plaintiff testified at his deposition that at the Step II hearing he stated that he could arrive at work between 10:30 a.m. and 11:30 a.m. Exhibit B, Pl. Dep. at 131:18-25; 132:1.

**Response**

Plaintiff states that these are not material facts.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

74.        Based on the mitigating circumstances, HRA's Office of Labor Relations recommended a 60 day suspension as a penalty. Exhibit N, Memorandum from Gary Dodson to plaintiff, dated July 9, 2010.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

75.        On August 5, 2010, this 60 day suspension was reduced to a 30 day suspension. Exhibit O, Memorandum from Denise DePrima to plaintiff, dated August 5, 2010.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

76.        Plaintiff testified that he served the 30 day suspension in September and October 2010. Exhibit B, Pl. Dep. at 132:2-9.

**Response**

Plaintiff states that these are not material facts as demonstrated by the fact that none of defendant's legal or factual arguments rely on any facts in this paragraph.  Subject to this objection, plaintiff agrees with the substance of this paragraph.

77.      On or about August 21, 2008, plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. Exhibit P, Charge of Discrimination, dated August 21, 2008.

**Response**

Agreed.

78.      Plaintiff commenced this action on June 21, 2010. Exhibit Q, Docket Sheet in McMillian v. City of New York, Docket No. 10 Civ. 4806 (JSR).

**Response**

Agreed.

79.      Plaintiff amended his Complaint on November 16, 2010. Exhibit Q,

**Response**

Agreed.

# Plaintiff's Additional Facts That Preclude Summary Judgment

1.      Plaintiff has never been trained in the use of Dragon Naturally Speaking or any other voice activation software.  Plaintiff Dep. 116:21-119:11.

2.      Plaintiff's caseload fluctuates.  Plaintiff has never been given a consistent, reduced caseload.  McMillan Aff. ¶ 3, O'Neill Dec. Ex. J.

3.      Plaintiff's is expected to work eight hours per day, including a one-hour lunch. Thus, not including lunch, plaintiff is expected to work seven hours per day or thirty-five hours per week.  McMillan Aff. ¶ 2.

4.      If an HRA employee works more than his or her expected time (in this case, seven hours), the employee can, with the supervisor's authorization, "bank" the additional time to be used as personal leave time at some future date.  Vinson Dep. 45-47.

5.      If an HRA employee works less than his or her expected time (in this case, seven hours), the employee can, with the supervisor's authorization, apply banked time to make up the difference and be paid for the entire day. Vinson Dep. 45-47.

6.      If plaintiff were permitted to work until 7:00 p.m. on a regular basis, based on his historical time records, he would easily satisfy the requirement of working thirty five hours per week.  O'Neill Dec. ¶¶ 23-28.

7.      On numerous occasions, plaintiff has worked until 7:00 p.m.  McMillan Aff. ¶ 5, O'Neill Dec. ¶ 23-28.

8.      Plaintiff's workplace is open until well past 7:00 p.m. every day. McMillan Aff. ¶ 5.

9.      Defendant has refused to grant to plaintiff the reasonable accommodation of working until 7:00 p.m. on a regular basis.  Thornton Dep. 58:9-17, Lemons Dep. 73:18-74:22, 161-164:4, O'Connor Dec. Ex. S.

10.     Defendant has not identified any "undue burden" associated with permitting plaintiff to work until 7:00 p.m. on a regular basis.  See Lemons Dep. 73:18-74:22, 161-164:4.


Dated: New York, New York
        February 4, 2011

MICHAEL G. O'NEILL
(MO3957)

_____
Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990